UNITED STATES BANKRUPTCY COURT
FOR THE
WESTERN DISTRICT OF KENTUCKY

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| STEVEN JAY LICHTENSTEIN | ) | CASE NO.: 04-30172 |
| | ) | |
| Debtor(s) | ) | |
| | ) | |
| ROBERTA J. BARBANEL | ) | AP NO.:   04-3296 |
| | ) | |
| Plaintiff(s) | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| STEVEN JAY LICHTENSTEIN | ) | |
| | ) | |
| Defendant(s) | ) | |

**MEMORANDUM-OPINION**

This matter came before the Court for trial on March 21, 2005 on the Complaint Objecting to Discharge of Plaintiff Roberta Barbanel ("Barbanel") against Defendant/Debtor Steven Jay Lichtenstein ("Debtor") pursuant o 11 U.S.C. §727(a)(2)(A), (a)(3), (a)(4), and/or (a)5. The parties appeared in person and by counsel. The Court, having considered the written submissions of the parties, the trial testimony of the witnesses and documentary evidence presented, will enter Judgment in favor of Barbanel and against Debtor. The following constitutes the Court's Findings of Fact and Conclusions of Law pursuant to Fed. R. Bankr. P. 7052.

**FINDINGS OF FACT**

Barbanel and Debtor were married and had two children, Arianne and Andrew. The parties divorced in 1990 and a Judgment was entered in their divorce action in Jefferson Circuit Court on

June 7, 1996. ("the Judgment"). The Judgment was in favor of Barbanel and required Debtor to pay her $226,887.61. This amount encompassed child support arrearages, attorney's fees, medical bills and insurance, maintenance and other items. Including interest and credits for amounts paid on the Judgment, the amount owed at the time of trial was approximately $500,439.03.

In 1995, Debtor married his current wife, Pamela Lichtenstein ("Pamela"). Debtor moved into the home Pamela purchased using the equity she received from her prior residence in her divorce. Debtor and Pamela had a pre-nuptial agreement whereby any amount which exceeded her equity would be split equally between them.

Debtor is a pediatric eye surgeon. He was employed by Louisville Children's Eye Specialists, P.S.C ("the P.S.C."), of which he is the sole shareholder, until December 1, 2004. At the time of trial he was unemployed. Pamela is employed by the P.S.C. Roberta is self-employed as an attorney.

Since the date of Debtor's marriage to Pamela, he has never maintained a bank account in his name. Pamela has an account with Bank One, n/k/a/ Chase Bank, that is solely in her name. She has sole authority to write checks on this account. Pamela uses this account to deposit her salary from the P.S.C. She earns approximately $93,466.30 per year from the P.S.C.

Pamela maintains a second bank account at Fifth Third Bank. This account is in Pamela's name only, however, Debtor has signature authority and a debit card on the account. Debtor may also make deposits into the account. Both Debtor and Pamela testified that they were aware that Debtor's creditors could not garnish funds from this account.

Pamela testified that while she made occasional deposits into the Fifth Third account, such as her tax refund checks, most of the deposits into the account were from Debtor. In the year prior

to the filing of Debtor's Petition, $48,770.25 was deposited into the account. Of this amount, $15,416.06 were checks to Debtor for work performed for entities other than the P.S.C., such as medical records reviews and medical surveys. The remaining $33,354.19 constituted Debtor's salary from the P.S.C.

The trial testimony established that Debtor made the following expenditures in the one year period prior to the date he filed his bankruptcy Petition: $1,603.87 on Debtor's hobbies, such as fees for a local flying club and a stamp collection, $5,5150 for living expenses for his 2 adult children, $1,615 for satellite television services, and $2,391 on pets.

Pamela and Debtor purchased a timeshare in Hawaii for $18,000 after their marriage. The title to the property is in Pamela's name alone. It is owned free and clear of any liens.

Debtor and Pamela testified that in approximately 1996 or 1997, they began shredding all of their financial records. They claim that a friend in the F.B.I. recommended that they do this. Even though Debtor was in litigation, they continued shredding their financial records until July of 2003. In the one year period before Debtor filed his Petition, Debtor and Pamela charged purchases totaling $75,569 on their credit card and debit cards. There are no records reflecting these transactions because the statements were shredded.

In the divorce action between Debtor and Barbanel, Barbanel was awarded custody of their 2 children. Shortly, thereafter, Roberta and the children moved to Cincinnati. In April of 1997, their daughter returned to live with Debtor until May 1998. Their son moved in with Debtor in August of 1997. Debtor was the sole source of support for the children at this time and Barbanel paid nothing for their support. Debtor paid for his son to attend a private high school and for his participation in 6 to 8 international programs at an average cost of $6,000 to $8,000 per program.

Debtor paid for these programs which allowed his son to travel all over the world in order to help him get an appointment to the Naval Academy. Debtor also committed to a voluntary $5,000 contribution to the Naval Academy to be paid over 4 years. $2,750 remains to be paid on this commitment.

In December of 2002, Pamela purchased a Corvette for $60,000, although she could not drive it. Debtor was the only one who drove the vehicle. After 12 months, the car was returned to the dealer.

Debtor's Voluntary Chapter 7 Petition was filed on January 12, 2004. On his Statement of Affairs, Question 2, Debtor stated that he received $1,000 from Alcon. This was inaccurate as he had actually received $8,500 from Alcon. Debtor testified that he did not receive his 1099 form from Alcon until after the Petition was filed. No amendment to the Petition was ever filed. Debtor also failed to include approximately $25,936.42 in income from sources other than the P.S.C. on the Statement of Affairs.

On Schedule B to his Petition, Debtor stated he had $65.00 in his checking account. He had no such account and the account he had access to had significantly more that $65.00 in it at the time of his Petition.

On Schedule F to the Petition, Debtor listed $1,043,332.98 in unsecured nonpriority claims. Debtor testified that most of the obligations listed in Schedule F were actually debts owed by the P.S.C. or were debts that he was current on at the time of filing. Debtor candidly admitted that if Barbanel had not sued the P.S.C. to collect on the Judgment, he would not have filed bankruptcy. He stated that the goal of his bankruptcy was to get out of, in whole or in part, the debt owed to Barbanel.

Debtor admitted that he paid on the wage garnishment Barbanel obtained up until 2000. At that point he stopped paying on the garnishment in order to pay for his children's living and educational expenses. Barbanel sued the P.S.C. for failing to pay on the garnishment and the P.S.C. was held liable. No appeal was taken and the P.S.C. filed its own bankruptcy shortly thereafter.

## LEGAL ANALYSIS

Barbanel filed this adversary proceeding seeking to bar Debtor's discharge pursuant to 11 U.S.C. § 727 (a)(2)(A), (a)(3), (a)(4) and (a)(5). The party objecting to discharge bears the burden of proving the objection by a preponderance of the evidence. In re Keeney, 227 F. 3d 679, 683 (6th Cir. 2000). The Court finds that Barbanel carried her burden of proof on her claims under §727(a)(2), (a)(3), (a)(4), and (a)(5). Success under any of these provisions is sufficient basis for a denial of Debtor's discharge.

Under 11 U.S.C. §727(a)(2)(A), Barbanel had to prove that Debtor, with intent to hinder, delay or defraud a creditor transferred, removed, destroyed, mutilated or concealed property of the debtor within one year before the date of the filing of the Petition. To succeed on this claim Barbanel had to establish (1) a disposition of property, such as concealment, and (2) a subjective intent by the Debtor to hinder, delay or defraud a creditor through the act of disposing of the property. Keeney, 227 F.3d at 683. Barbanel easily met these elements with proof showing that Debtor, within one year prior to filing his Petition, deposited approximately $48,770.25 into his current wife's bank account. Debtor and his wife both testified that they were aware that the account could not be garnished by Debtor's creditors. The Court may infer Debtor's fraudulent intent from this action. See, In re Chambers, 36 B.R. 791, 793 (Bankr. W. D. Ky. 1984).

Barbanel also successfully proved her claim under 11 U.S.C. §727(a)(3). The statute provides that discharge shall not be entered where the debtor has concealed, destroyed, mutilated, falsified or failed to keep or preserve any recorded information including books, documents, records and papers, from which the debtor's financial condition or business transactions might be ascertained. The purpose of this provision is to ensure that creditors receive sufficient information to trace a debtor's financial history for a reasonable period past to present. In re Trogdon, 111 B. R. 655, 658 (Bankr. N.D. Ohio 1990). Debtor testified that he and his current wife regularly shred their financial records that contain any identifying information. While Barbanel's counsel diligently pursued Debtor and ably traced much of Debtor's financial information, she was prevented from determining what items and services Debtor purchased with credit cards in the year prior to his filing for bankruptcy protection. Nearly $75,000 in purchases were untraceable because of Debtor's practice of shredding his financial information. While Debtor explained his purpose for doing this, the Court cannot sanction this practice, when Debtor knew he had a Judgment pending against him and continued this practice months after litigation was instituted regarding his finances. This evidence was sufficient to sustain Barbanel's burden under 11 U.S.C. §727(a)(3).

Barbanel also proved her claim under 11 U.S.C. §727(a)(4), which requires denial of a discharge where a debtor "knowingly and fraudulently, in or in connection with the case made a false oath or account." Barbanel had to prove by a preponderance of the evidence that (1) debtor made a statement under oath; (2) the statement was false; (3) the debtor knew the statement was false; (4) the debtor made the statement with fraudulent intent; and (5) the statement related materially to the bankruptcy case. Keeney, 227 F.3d at 685. The requisite intent may be proven by

an inference drawn from the facts. Id., See also, Lawrence P. King, 6 Collier on Bankruptcy ¶ 727.04 [1][a] (15th ed. 2005).

Statements made in bankruptcy schedules are made under oath and a statement is material if it concerns discovery of assets or the existence or disposition of property. In re Hamo, 233 B.R. 718, 725 (B.A.P. 6th Cir. 1999). The evidence established that Debtor misrepresented his income in the 2 years prior to the date of his Petition on the Statement of Financial Affairs. He also listed numerous debts on Schedule F that were actually obligations of the P.S.C., rather than his personally. Debtor's failure to include nearly $25,000 in income from sources other than the P.S.C. is significant. While the Court accepts Debtor's explanation as to why he failed to include $8,500 in income from Alcon, the Court cannot overlook his omission of the rest of the income from sources other than the P.S.C. Given Debtor's failure to amend his Petition to include any of this income and his testimony that his primary goal in filing this bankruptcy was to avoid Barbanel's debt, the Court finds the evidence sufficient to deny discharge under 11 U.S.C. §727(a)(4).

Barbanel's last claim is based on 11 U.S.C. §727(a)(5) which provides that a Debtor will be denied a discharge when, "the debtor has failed to explain satisfactorily, before the determination of denial of discharge any loss of assets or deficiency of assets to meet the debtor's liabilities." As the objecting party, Barbanel had the initial burden of proving that (1) the debtor at one time, not too remote from the bankruptcy, owned identifiable assets; (2) on the date debtor commenced the bankruptcy, debtor no longer owned the particular assets; and (3) the bankruptcy pleadings do not reflect an adequate explanation for the disposition of the assets. In re O'Bryan, 246 B.R. 271, 279 (Bankr. W.D. Ky. 1999). Once this burden is met, the burden then shifts to the debtor to provide a satisfactory explanation for the disposition of the assets. Id. The same evidence that proved the

claim under 11 U.S.C. §727(a)(3) proved this claim. Debtor did not provide a satisfactory explanation for the loss of his financial records, other than that they were shredded. Given the history of this case and the events precipitating Debtor's filing, shredding of the financial records was not justified and denial of Debtor's discharge is warranted on this claim also.

The Court was presented with ample evidence under each claim asserted to justify denial of discharge. Success under any of the claims was sufficient to deny Debtor's discharge. The Court is satisfied that Barbanel proved each claim and Debtor is not entitled to a discharge.

## **CONCLUSION**

For all the above reasons, the Court will enter Judgment in favor of Barbanel on her Complaint Objecting to Discharge. Debtor Steven Jay Lichtenstein is denied a discharge pursuant to 11 U.S.C. 727(a)(2)(A), (a)(3), (a)4, and (a)(5). A Judgment acompanies this Memorandum-Opinion.